UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TAMBLYN CUBERO, AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF FRANK FLIPPO, DECEASED,
BRENT PHILLIP FLIPPO, AND
ABIGAIL MARIE FLIPPO

      Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES LTD.
a/k/a ROYAL CARIBBEAN CRUISES
LTD., A LIBERIAN CORPORATION,
d/b/a ROYAL CARIBBEAN CRUISE
LINE and d/b/a ROYAL CARIBBEAN
INTERNATIONAL

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Tamblyn Cubero as Personal Representative of the Estate of FRANK FLIPPO, and for all claimants including Decedent's lineal children BRENT PHILLIP FLIPPO and ABIGAIL MARIE FLIPPO ("Plaintiffs"), sue Defendants, ROYAL CARIBBEAN CRUISES LTD. a/k/a ROYAL CARIBBEAN CRUISES LTD., A LIBERIAN CORPORATION, d/b/a ROYAL CARIBBEAN CRUISE LINE and d/b/a ROYAL CARIBBEAN INTERNATIONAL, (collectively "Defendant" or "Royal Caribbean"), and in support thereof alleges:

**PRELIMINARY STATEMENT**

1. This is an action for the wrongful death of Frank Flippo, a passenger aboard the Royal Caribbean M/V Liberty of the Seas cruise ship ("Vessel"), which at all material times, was owned, operated and/or managed by Royal Caribbean.

2. Royal Caribbean's negligence in designing, maintaining, operating and/or managing the Vessel, and their failure to provide a seaworthy vessel, were the direct, proximate and legal cause of Frank Flippo's death at sea on or about March 22, 2015.

3. This action is brought by Frank Flippo's personal representative and sister Tamblyn Cubero, on behalf of the Estate of her deceased brother, and his two financially dependent children for pre-death pain and suffering, loss of support and/or services.

**PARTIES, JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as certain causes of action asserted in this Complaint arise under the Death on the High Seas Act (DOHSA), 46 U.S.C. §§ 761-768.

5. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00 USD), exclusive of interest, attorneys' fees, and costs, and is between citizens of different states and a citizen of a foreign country.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)-(c).

7. This complaint asserts a cause of action for the wrongful death of Frank Flippo, a citizen of the United States and resident of Sarasota County, Florida, at the time of his death and for his beneficiaries who are:

    a. Brent Phillip Flippo, Frank Flippo's son;

    b. Abigail Marie Flippo, Frank Flippo's daughter; and

    c. The Decedent's Estate.

8. The Liberty of the Seas (or the "Vessel") is a 339m Bahamian Documented Vessel, IMO 9330032, with a hailing port of Nassau, Bahamas, and it serves as a cruise ship in the State of Florida for voyages to the Caribbean and Mexico, among other destinations.

9. Defendant, ROYAL CARIBBEAN CRUISES LTD. a/k/a ROYAL CARIBBEAN CRUISES LTD., A LIBERIAN CORPORATION, d/b/a ROYAL CARIBBEAN CRUISE LINE and d/b/a ROYAL CARIBBEAN INTERNATIONAL is a corporation authorized and existing under the Laws of the country of Liberia, Africa, and has its principal place of business in Miami-Dade County, Florida.

10. At all times material hereto, the Defendant Royal Caribbean owned, operated, managed, chartered, maintained, and/or controlled the Vessel on which the subject incidents occurred.

11. At all times material hereto the Defendant Royal Caribbean had its base of operations in Miami-Dade County, Florida.

12. At all times material hereto, the Defendant Royal Caribbean violated duties that it owed under the general maritime law and under common law to the Plaintiffs through its actions, omissions and conduct.

## GENERAL ALLEGATIONS

13. At the time of his death, Frank Flippo was living with and providing care to his two children: Abigail Flippo and Brent Flippo. At the time of his death, both children were living with Frank. Abigail is mentally challenged due to a horrific car accident that caused great bodily harm to her and claimed the life of her mother, and Brent is battling leukemia.

14. On March 19, 2015, Frank Flippo and Rene Von Hoyt boarded the Vessel. Frank Flippo and Rene Von Hoyt planned their cruise as a celebration on of one of Rene's friends fiftieth birthday. The Vessel departed from the port of Fort Lauderdale and was scheduled to stop only in Cozumel, Mexico. Upon boarding the Vessel, Frank Flippo and Rene Von Hoyt toured the majority of the Vessel and ended their night by having dinner with friends.

15. On March 20, 2015, Frank Flippo and Rene Von Hoyt remained aboard the Vessel the whole day, visiting the ship's restaurants and pools. At night, they enjoyed the festivities offered on board the Vessel.

16. On March 21, 2015, the Vessel arrived at Cozumel, Mexico, where Frank Flippo and Rene Von Hoyt disembarked. Both Frank Flippo and Rene Von Hoyt participated in a tour of the Mayan Ruins at Chichen Itza. Frank Flippo had been looking forward to this part of the cruise for some time, and had discussed visiting the ruins with his son, Brent. At the ruins, Frank Flippo purchased several souvenirs for both of his children.

17. On March 22, 2015, as the Vessel was returning to Fort Lauderdale, Frank Flippo and Rene Von Hoyt decided to enjoy the day poolside. At approximately noon, after having breakfast at the Vessel's buffet, Frank Flippo and Rene Von Hoyt proceeded to the upper deck pool where they started to drink rum runners. As part of an ongoing promotion, Royal Caribbean was offering passengers free mugs for every rum runner ordered.

18. Throughout the afternoon, Frank Flippo and Rene Von Hoyt were both served at the same poolside bar. After several hours of drinking and lounging in and around the pool, Rene Von Hoyt retired to her stateroom because she was feeling ill. Meanwhile, Frank Flippo remained at the same bar where he continued being served and consuming the same drinks served by the same bartender(s).

19. Frank Flippo consumed so much alcohol in such a short period of time on March 22, 2015 that his judgment and physical coordination were substantially impaired. Royal Caribbean negligently served alcoholic beverages to Frank Flippo in excess, causing his judgment and faculties to become substantially impaired.

20. Royal Caribbean has a corporate policy of not keeping track of the amount of alcohol it freely serves its passengers. This is done so as not to provide notice of overdrinking to passengers who might become injured in part or in whole due to intoxication and then attempt to sue the cruise line. This policy is also present in other areas of the Vessel's operation.

21. Upon information and belief, Frank Flippo at some point stumbled out of the poolside bar and went deck-side to sit on a lounge chair. Frank Flippo remained sitting on that chair for approximately half an hour. It is unclear whether Frank Flippo was conscious during this time; although Royal Caribbean had notice of the large amount of alcohol Frank Flippo had consumed in a short period of time, at no point was Frank Flippo ever approached by a Royal Caribbean representative.

22. At some point thereafter, Frank Flippo approached the outer railings of the Vessel and fell overboard. A nearby witness immediately reported Frank's fall. After a brief stop for the search of Frank, the Vessel continued to its final destination of Fort Lauderdale. After several days of searching, the U.S. Coast Guard terminated its search efforts.

23. Despite having prior notice that passengers have fallen overboard due to alcohol consumption, Royal Caribbean negligently failed to take even the most minute precautions to prepare for this eventuality and to be able to either (a) prevent it from occurring, or (b) rescue a passenger who falls into the sea.

24. Moreover, Royal Caribbean did not train its deck personnel, including wait staff, security officers, bartenders, pool attendants and supervisors to monitor the rail and passengers consuming alcohol.

25. Royal Caribbean failed to closely monitor its closed circuit television camera, which was trained on the rail. It also failed to have a system in place where it could signal suspicious conduct on deck areas and then intervene in a timely fashion.

26. Moreover, Royal Caribbean did not have a restroom located in a sufficiently close location to the bars where the drinks are served; Royal Caribbean is aware that in the absence of a nearby restroom, passengers in the past have resorted to climbing the railings in an effort to relieve themselves and are put into grave danger as a result.

27. Frank Flippo was neither depressed nor suicidal. He had no history of depression, suicide attempts, suicidal tendencies or ideations. Frank Flippo was looking forward to the launching of two projects which he had been working on for years. He was a devoted father who took his family responsibilities, including the financial support of his children, very seriously. Due to Frank Flippo's professional success and both of his children back at home, Frank was at arguably the best point of his life. Having already overcome numerous traumatic life events, Frank was ready to move his life forward in a positive direction for himself and his family. Frank had many friends and was a well-respected member of the community in which he lived. Frank was also well respected in his workplace and had been working for the same company for over 15 years.

## COUNT I: NEGLIGENCE

28. Plaintiffs re-adopt and re-allege Paragraphs 1 through 27 as if fully set forth herein, and further allege as follows:

29. Royal Caribbean owed a duty of reasonable care to Frank Flippo, as it did to all passengers aboard the Vessel.

30. Notwithstanding Royal Caribbean's aforementioned duty, Royal Caribbean breached this duty by:

   a. Over-serving Plaintiffs' decedent Frank Flippo with alcoholic beverages to the point where he was physically and mentally impaired and unable to properly care for himself;

   b. Failing to have proper policies and procedures for rescuing passengers who go overboard on its vessels;

   c. Failing to have proper policies and procedures for supervising passengers and prevent them from wandering around high risk areas while under the influence of alcohol;

   d. Failing to have proper policies and procedures for caring for intoxicated passengers;

   e. Failing to have adequate security for passengers on open decks;

   f. Failing to train and/or supervise employees not to serve excessive amounts of alcohol to passengers;

   g. Failing to warn passengers of the dangers of drinking alcohol to excess on a cruise ship where there are many dangers to their safety;

   h. Encouraging passengers to drink alcohol to the point where they are incapable of caring for their own safety, they lose their inhibitions, and/or their judgment becomes substantially impaired;

    i. Failing to closely monitor cameras trained on passenger railings on open decks, or in the alternative, failing to have cameras which monitor passenger railings on open decks;

    j. Failing to have sufficient numbers of security personnel to provide reasonable security to passengers; and

    k. Failing to learn from prior incidents of passengers falling into the sea on vessels owned and/or operated by Royal Caribbean.

31. Royal Caribbean knew of these dangerous conditions.

32. As a result of the foregoing, the death of Frank Flippo was caused by Royal Caribbean's knowledge of unsafe conditions by which Royal Caribbean allowed, and/or permitted to go over the Vessel's railing and fall to his death from an upper deck on the Vessel after he had been served an excessive amount of alcohol. Despite his judgment becoming impaired and his physical inability to care for his own safety, there was no intervention or supervision of passengers like Frank Flippo.

33. At all times material hereto, Frank Flippo was incapable of acting with due care for his own safety as a result of the previously stated conduct, actions and omissions of Royal Caribbean.

34. At all times material hereto, Royal Caribbean created the dangerous conditions of which Plaintiffs complain, the dangerous conditions existed for a sufficient period of time that Royal Caribbean had constructive knowledge of the dangerous conditions, and/or Royal Caribbean had actual knowledge of the dangerous conditions herein alleged to have caused or to have contributed to causing Frank Flippo's untimely demise.

35. As a result of the Royal Caribbean's negligence, Plaintiffs suffered damages including but not limited to pre-death conscious pain and suffering, the loss of financial support and services, other

pecuniary losses, the value of lost services, loss of nurture, care and guidance, funeral and estate expenses, and all other damages allowed by DOHSA.

36. In the alternative or in addition thereto, Royal Caribbean acted with gross negligence and/or reckless indifference for the safety of its passengers, including Frank Flippo.

    WHEREFORE, Plaintiffs demand judgment for damages, punitive damages, prejudgment interest and costs. Jury trial is demanded.

Dated: March 14, 2016

Respectfully Submitted,
**MOORE & COMPANY, P.A.**
*Counsel to Plaintiffs*
355 Alhambra Circle, Suite 1100
Coral Gables, FL  33134
Telephone: (786) 221-0600
Facsimile:  (786) 221-0601
Email: swagner@moore-and-co.com

**/s/ Scott A. Wagner**
_____
Scott A. Wagner, Esq.
Florida Bar No.: 10244