UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CV-20929-GAYLES

TAMBLYN CUBERO, *et al.*,

    Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES LTD.,

    Defendant.

_____/

### ORDER ON DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** came before the Court upon Defendant Royal Caribbean Cruises Ltd.'s ("Defendant" or "Royal Caribbean") Motion to Dismiss Improper Parties and Motion to Dismiss and/or Strike Allegations in Plaintiffs' Complaint ("Motion") [ECF No. 11], filed on April 13, 2016. On May 2, 2016, Plaintiffs Tamblyn Cubero ("Tamblyn"), as personal representative of the Estate of Frank Flippo, Brent Phillip Flippo ("Brent"), and Abigail Marie Flippo ("Abigail") (collectively, "Plaintiffs") filed their Response to Royal Caribbean's Motion to Dismiss [ECF No. 15], to which Defendant timely filed its Reply on May 11, 2016 [ECF No. 17]. Upon review of the Motion, Response, and Reply the Motion is **granted in part and denied in part.**

### FACTUAL BACKGROUND[1]

On March 19, 2015, Frank Flippo and Rene Von Hoyt ("Rene") boarded Royal Caribbean's Liberty of the Seas cruise ship ("Vessel"), which is owned, operated, and managed by Royal Caribbean. [ECF No. 1 at ¶¶ 1, 14]. The Vessel departed from the port of Fort

---

[1] For the purposes of the motion to dismiss, the court takes the plaintiff's factual allegations as true. *Brooks v. Blue Cross v. Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

Lauderdale and was scheduled to stop only in Cozumel, Mexico. [*Id.*]. On March 22, 2015, as the Vessel was returning to Fort Lauderdale, Frank and Rene decided to enjoy the day poolside. [*Id.* at ¶ 17]. Around noon, Frank and Rene went to the upper deck pool where they started to drink rum runners at the poolside bar. [*Id.*]. After several hours of drinking and lounging in and around the pool, Rene retired to her stateroom because she was feeling ill while Frank remained at the same bar. [*Id.* at ¶ 18] Meanwhile, the same bartenders continued to serve Frank, and Frank continued to consume the same drinks. [*Id.*].

Frank consumed so much alcohol in such a short period of time that his judgment and physical coordination were substantially impaired. [*Id.*]. Upon information and belief, Frank at some point stumbled out of the poolside bar and went deck-side to sit on a lounge chair for about half an hour. [*Id.* at ¶ 21]. At some point thereafter, Frank approached the outer railings of the Vessel and fell overboard. [*Id.* at ¶ 22]. A nearby witness immediately reported his fall; the Vessel stopped briefly to search for Frank. [*Id.*] Unfortunately, Frank was never found. [*Id.*]

Frank was neither depressed nor suicidal and had no history of either condition. [*Id.* at ¶ 27]. At the time of death, Frank Flippo was living with and providing care to his two children: Abigail and Brent. [*Id.* at ¶ 13]. Both children were living with Frank at the time of his death. [*Id.*]. Abigail is mentally challenged due to a horrific car accident, and Brent is battling leukemia. [*Id.*].

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than

an unadorned, the defendant-unlawfully-harmed-me accusation." *Id*. (alteration added) (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678.

A motion to strike under 12(f) applies to "a pleading," and a court may strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Compared with motions to dismiss, which can address an entire claim or count, portions of a claim can be stricken under Rule 12(f). *See Hutchings v. Fed. Ins. Co.*, No. 6:08–CV–305–ORL–19KR, 2008 WL 4186994, at *2 (M.D. Fla. Sept. 8, 2008) (comparing Fed. R. Civ. P. 12(b)(6) with Fed. R. Civ. P. 12(f)). The purpose of a motion to strike is "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Gandhi v. Carnival Corp.*, No. 13–24509–CIV, 2014 WL 1028940, at *6 (S.D. Fla. Mar. 14, 2014).

## ANALYSIS

General maritime law applies to cases that allege torts committed aboard cruise ships sailing in navigable waters. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959). Consequently, the Court shall apply general maritime law to the following analysis. Additionally, both parties agree that the Death on the High Seas Act ("DOHSA") applies to this case, as DOHSA establishes a cause of action for the death of a person "caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any state." 46 U.S.C. § 30302.

Defendant is seeking dismissal/striking of (1) Brent and Abigail's individual claims; (2) a theory of negligence based on a duty to maintain and monitor security cameras;[2] (3) pre-death pain and suffering damages; (4) nurture and guidance damages; and (5) punitive damages. [ECF No. 11 at 3–8]. Plaintiffs have now stipulated in their Response that Tamblyn (hereinafter "Plaintiff") is the party in interest to bring the claim, pre-death pain and suffering damages are not available to the Estate, and punitive damages are also not available under these circumstances. [ECF No. 15 at 2]. Thus, only two issues remain from Defendant's Motion.

**A. Duty**

Defendant argues that Plaintiff's Complaint alleges a theory of negligence premised, in part, on Royal Caribbean's failure to maintain and monitor security cameras on board the Vessel and that this theory should be dismissed and/or stricken from the Complaint as no such duty exists under maritime law. [ECF No. 11 at 4–5]. Under maritime law, "the owner of a ship in navigable waters owes passengers a 'duty of reasonable care' under the circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015). "A carrier by sea, however, is not

---

[2] Plaintiffs assert that Defendant was negligent based on Defendant's breach of several duties [ECF No. 1 at ¶ 31]. However, Defendant only moves to dismiss/strike Plaintiffs' theory of negligence based on a duty to maintain and monitor security cameras.

4

liable to passengers as an insurer, but only for its [own] negligence." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984). To plead negligence under maritime law, Plaintiff must allege that (1) Royal Caribbean had a duty to protect Frank from a particular injury; (2) Royal Caribbean breached that duty; (3) the breach actually and proximately caused Frank's injury; and (4) Frank suffered actual harm. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (citation omitted).

Defendant principally relies on *Mizener v. Carnival Corp.*, where the court dismissed a negligence action because the court did not find that the cruise ship "voluntarily undertook a duty to monitor cameras for the safety and security of its passengers." No 05–22965, 2006 U.S. Dist. LEXIS 44332, at *10 (S.D. Fla. June 15, 2006). However, the court there noted that the plaintiff had not alleged that the passengers relied upon the camera nor that the cruise ship advertised the camera as a security measure. *Id.* A more analogous case lies in *Tello v. Royal Caribbean Cruises, Ltd.*, where the court found that the plaintiff adequately alleged facts to support a plausible claim that the defendant failed to exercise "reasonable care under the circumstances." 939 F. Supp. 2d 1269, 1275–76 (S.D. Fla. 2013) (holding that the plaintiff adequately pleaded a claim for negligence under DOHSA).  The court in *Tello* found that the defendant's actions of over-serving alcoholic drinks to the deceased, failing to assist the deceased once he was inebriated and disoriented, and failing to initiate a prompt search-and-rescue when the deceased fell overboard established support for the plaintiff's negligence claim. *Id.*

Although Defendant argues that Plaintiff's theory of negligence at issue should be dismissed or, alternatively, stricken from the Complaint, the Court agrees with Plaintiff that whether Royal Caribbean owed Frank specific legal duties is an issue more properly addressed at

5

later stages of the litigation. *See, e.g.*, *Bridgewater v. Carnival Corp.*, No. 10–22241–CIV, 2011 WL 817936, at *2 n.3 (S.D. Fla. Mar. 2, 2011) ("Carnival disputes whether it owed a duty to Plaintiff under the facts as pleaded. However such a contention is more appropriate for summary judgment than for the consideration upon a motion to dismiss." (record citation omitted)). Furthermore, "[t]he Court will not strike alleged duties from the Complaint[ ] in line-item fashion." *Holguin v. Celebrity Cruises, Inc.*, 2010 WL 1837808, No. 10–20215–CIV, at *1 (S.D. Fla. May 4, 2010). Accordingly, Defendant's Motion to Dismiss and/or Strike on this ground is denied.

**B. Nurture and Guidance Damages**

Defendant also argues that Plaintiff's request for nurture and guidance damages should be dismissed as such damages are limited to cases involving a minor child's loss of his or her parent. [ECF No. 11 at 8]. Defendant notes that Plaintiff fails to allege that Brent and Abigail are of minor age [*Id.*]. Under DOHSA, the measure of recovery "is the actual pecuniary benefits that the decedent's beneficiaries could reasonably have expected to receive from the continued life of the decedent." *Solomon v. Warren*, 540 F.2d 777, 786 (5th Cir. 1976).[3] In order to recover damages for loss of nurture and guidance, the child must produce specific evidence to "show that the deceased parent was fit to furnish such training and that training and guidance had actually been rendered by the parent during his or her lifetime to their children." *Id.* at 788.

Notably, the Court in *Solomon* did not limit recovery of damages to minor children as Defendant asserts, but instead found that "it is clear that those who have reached their majority must be very specific to show that their parents' guidance had a pecuniary value beyond the irreplaceable values of companionship and affection." *Id.* at 789; *see, e.g.*, *Kallas v. Carnival*

---

[3] Decisions of the Fifth Circuit handed down prior to September 30, 1981, are binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

*Corp.*, No. 06–20115–CIV, 2007 WL 1526699, at *2 (S.D. Fla. May 23, 2007) (same); *see also Gavigan v. Celebrity Cruises Inc.*, 843 F. Supp. 2d 1254, 1260 (S.D. Fla. 2011) ("Plaintiff alleges no facts describing . . . any aspect of the 'fatherly nurture and guidance' that any of the adult children would have received if not for the death of their father. There are also no facts connecting that lack of guidance to a subsequent financial loss. Plaintiff must supply the missing facts to survive a motion to dismiss.").

While Plaintiff has pled that both children lived with Frank because Abigail is "mentally challenged due to a horrific car accident" and "Brent is battling leukemia," [ECF No. 1 at ¶ 13], the Court finds that the Plaintiff has failed to show specifically how Frank's guidance "had a pecuniary value beyond the irreplaceable values of companionship and affection." *Solomon*, 540 F.2d at 789. Plaintiff merely alleges that Frank "was living with and providing care to his two children" at the time of his death. [*Id.*]. However, Plaintiff has failed to allege "very specific" facts that would connect the lack of nurture and guidance to a subsequent financial loss. Plaintiff must supply the missing facts to survive a motion to dismiss. Accordingly, Defendant's Motion to Dismiss and/or Strike on this ground is granted without prejudice, leaving Plaintiff with leave to amend.

## CONCLUSION

Based on the Court's forgoing analysis, it is **ORDERED AND ADJUDGED** that the Motion to Dismiss and/or Strike Allegations in Plaintiff's Complaint **[ECF No. 11]** is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) The motion to dismiss Plaintiffs Brent Phillip Flippo and Abigail Marie Flippo's individual claims is **GRANTED**, and those claims are **DISMISSED WITH PREJUDICE**;

7

(2) The motion to dismiss and/or strike Plaintiff's theory of negligence based on a duty to maintain and monitor security cameras on board the Vessel is **DENIED**;

(3) The motion to dismiss Plaintiff's claim for pre-death pain and suffering damages is **GRANTED**, and that claim is **DISMISSED WITH PREJUDICE**;

(4) The motion to dismiss and/or strike Plaintiff's request for nurture and guidance damages is **GRANTED**, and that claim is **DISMISSED WITHOUT PREJUDICE**: Plaintiff is granted leave to amend this request for damages within fourteen (14) days of this Order;

(5) The motion to dismiss Plaintiff's claim for punitive damages is **GRANTED**, and that claim is **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 15th day of August, 2016.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge Turnoff
All Counsel of Record